[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15423
Non-Argument Calendar
_____

Agency No. A098-944-893



PJERIN KALAJ,
ADRIANA KALAJ,
ALBERT KALAJI,
LUBOMIR KALAJI,

Petitioners,

versus

US ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 30, 2013)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Pjerin Kalaj, his wife, and their two sons (collectively, "Kalaj" unless otherwise noted), natives and citizens of Albania, seek review of the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of Kalaj's application for asylum pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a), withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c).  In his application and testimony Kalaj asserted that he was a Catholic who had built a church in a small village in Albania, and as a result, Islamic fundamentalists began targeting him.  Kalaj challenges the denial of his asylum application on the basis that the IJ and the BIA: (1) erred in determining that he failed to demonstrate past persecution or a well-founded fear of future persecution; and (2) erred by relying excessively on U.S. Department of State Country Reports on Human Rights Practices in Albania ("Country Reports"), despite his expert witness's testimony that they are unreliable.  After thorough review, we dismiss the petition in part and deny the petition in part.

We review only the BIA's decision unless the BIA expressly adopts or agrees with the IJ's decision, in which case we review both the BIA and the IJ's decisions.  Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009). We lack jurisdiction to consider an argument that the petitioner failed to exhaust by

2

raising it before the BIA.  8 U.S.C. § 1252(d)(1); Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006).  We review legal determinations de novo, and factual findings under the "highly deferential" substantial evidence test, which requires us to affirm the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Kazemzadeh, 577 F.3d at 1350-51 (quotation omitted).  We "may not re-weigh the evidence from scratch" and will only reverse if the record compels reversal.  Id. at 1351 (quotation omitted).

First, we are unpersuaded by Kalaj's claim that the IJ and BIA erred in determining that he failed to demonstrate past persecution or a well-founded fear of future persecution.  An alien who is present in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1).  The Attorney General or the Secretary of Homeland Security has the discretion to grant asylum if the alien meets his burden of proving his status as a "refugee."  8 U.S.C. § 1158(b)(1)(A); 8 C.F.R. § 208.13(a); Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  A "refugee" is, in relevant part, any person outside the country of his nationality, who is "unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of persecution or a well-founded fear of persecution on account of" a protected ground, including religion.  8 U.S.C. § 1101(a)(42)(A).

3

An asylum applicant must establish either: "(1) past persecution on account of a statutorily protected ground or (2) a well-founded fear of future persecution on account of a protected ground." Li Shan Chen v. U.S. Att'y Gen., 672 F.3d 961, 964 (11th Cir. 2011) (quotation omitted). We have explained that persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive . . . . Persecution requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." Shi v. U.S. Att'y Gen., 707 F.3d 1231, 1235 (11th Cir. 2013) (citation and quotations omitted). We must consider the cumulative effect of any alleged harms. Id.

To show a well-founded fear of future persecution, an applicant must establish that his fear is "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. In most cases, the objective prong can be fulfilled either by establishing past persecution or that the alien has a "good reason to fear future persecution." Id. (quotation omitted). If an asylum applicant alleges persecution by a private actor, he must prove that "his home country is unable or unwilling to protect him." Ayala v. U.S. Att'y Gen., 605 F.3d 941, 950 (11th Cir. 2010).

For starters, Kalaj argues for the first time on appeal that the IJ and the BIA erred in determining that he failed to establish past persecution, and he challenges their factual finding that the shooting incident did not occur. Kalaj conceded in his

4

appeal to the BIA that he had not demonstrated past persecution.  Moreover, Kalaj specifically accepted the IJ's factual findings.  As a result, Kalaj failed to exhaust his administrative remedies by raising those issues before the BIA and we lack jurisdiction to consider them.  8 U.S.C. § 1252(d)(1); Amaya-Artunduaga, 463 F.3d at 1250-51.  Accordingly, we dismiss Kalaj's petition to the extent that he challenges the IJ's determination that the shooting incident did not occur and that he failed to establish past persecution.

As for Kalaj's challenge to the IJ and the BIA's determination that he failed to establish a well-founded fear of future persecution, the BIA specifically agreed with the IJ's reasoning in reaching this conclusion, and we therefore review both the BIA's opinion and the IJ's order.  Kazemzadeh, 577 F.3d at 1350.  Here, the IJ and the BIA determined that Kalaj's fear of future persecution was not well-founded, because (1) Kalaj's parents remained safely in Albania despite being identified as contributors to the church; (2) the church itself continued to operate without problems; and (3) various reports on Albanian country conditions indicated that Albania allowed religious freedom, that peaceful inter-faith co-existence in Albania was not under threat, and that foreign extremists' attempts to import fundamentalism had been resisted.

Based on these findings, which are supported by substantial evidence, the record does not compel reversal.  See id. at 1350-51, 1353.  Indeed, as the record

5

shows, Kalaj testified that his parents remained safe in Albania and that the church that he built continues to operate. Furthermore, various reports about Albanian country conditions indicated that freedom of religion and peaceful inter-faith co-existence were strong in Albania.

As for Kalaj's argument that the IJ and the BIA erred in relying on the fact that Kalaj's parents remain safe and that the church continues to operate, we are unpersuaded. Kalaj's explanation -- that his parents and the church remained safe because Kalaj, viewed as an "activist" by fundamentalists, was the principal target -- does not compel the conclusion that the IJ or the BIA erred in concluding that his fear was not objectively reasonable. As we see it, Kalaj has failed to allege anything else even close to persecution. See Shi, 707 F.3d at 1235. Accordingly, we deny Kalaj's petition to the extent that he challenges the IJ and the BIA's conclusion that his fear of future persecution was not well-founded.

We likewise find no merit to Kalaj's claim that the IJ and BIA erred by relying excessively on the Country Reports. The IJ and the BIA "must consider all evidence introduced by the applicant," but are not required to discuss every piece of evidence presented if they have given "reasoned consideration" to the application. Kazemzadeh, 577 F.3d at 1351 (quotations omitted). Rather, they must "consider the issues raised and announce [the] decision in terms sufficient to enable a reviewing court to perceive that [they have] heard and thought and not

6

merely reacted." Id. (quotation omitted). The IJ and the BIA "are entitled to rely heavily upon State Department [C]ountry [R]eports," but they must also analyze the "unique facts of each applicant's case." Xiu Ying Wu v. U.S. Att'y Gen., 712 F.3d 486, 495 (11th Cir. 2013) (quotations omitted).

Here, Kalaj argues that he presented an expert witness who testified that Kalaj's claims were consistent with Albanian country conditions and that the Country Reports were unreliable, and that the IJ and the BIA failed to provide an individualized analysis explaining why they afforded so little weight to the expert testimony. But Kalaj's arguments are unavailing.

First, the IJ and the BIA did consider the expert witness's testimony. The IJ specifically stated that she had reviewed all of the background documents and she discussed in detail the expert witness's testimony that the Country Reports were unreliable. The BIA determined that the IJ had considered the expert testimony and that she "carefully assessed" the reliability of the reports before using them. Accordingly, the IJ and the BIA considered all the evidence and the issues raised, and gave "reasoned consideration" to Kalaj's application. See Kazemzadeh, 577 F.3d at 1351.

Second, Kalaj fails to point to any binding precedent for the proposition that the IJ and the BIA must provide an individualized explanation for their reliance on each piece of evidence. Even if such a rule existed, the IJ expressly stated that the

expert witness's testimony supported the accuracy of the Country Reports. The IJ further stated that another report, which Kalaj himself submitted to bolster the expert witness's testimony that fundamentalism in Albania was on the rise, also supported the conclusion that "peaceful inter-faith co-existence" in Albania continued. The BIA determined that the IJ had "carefully assessed" the Country Report before relying on it, and noted that the IJ had evaluated the expert witness's testimony regarding Albanian country conditions. The IJ and the BIA were entitled to rely on the Country Reports, because they had also considered the "unique facts" of Kalaj's claim. See Xiu Ying Wu, 712 F.3d at 495. Accordingly, we deny Kalaj's petition to the extent that he challenges the IJ and the BIA's reliance on the Country Reports and the 2009 International Religious Freedom Report from the United States Department of State.

**PETITION DISMISSED IN PART; DENIED IN PART.**

8