[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11852
Non-Argument Calendar

_____

Agency No. A208-134-160

ALEXANDER GUTIERREZ-JOSE,
JUAN GUTIERREZ-GUTIERREZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 15, 2021)

Before JORDAN, LAGOA, and BRASHER Circuit Judges.

PER CURIAM:

Juan Gutierrez-Gutierrez seeks review of a final order of the Board of Immigration Appeals affirming an immigration judge's denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. The IJ concluded that Mr. Gutierrez's application for asylum should be denied due to the failure to establish past persecution on account of a statutorily protected ground and the failure to establish a well-founded fear of future prosecution based on that protected ground. The BIA affirmed without opinion.

On appeal Mr. Gutierrez argues the IJ erred by holding that his proposed group—business owners who are threatened—was ineligible for protection and that there was an insufficient nexus between his social group and any persecution he suffered. The government argues that we should affirm the BIA's decision because its denial was supported by substantial evidence.

For reasons explained below, we conclude that Mr. Gutierrez administratively exhausted his claims, but that substantial evidence supports the IJ's conclusions. We therefore deny the petition.

**I.**

2

Mr. Gutierrez, a citizen of Guatemala, left his country on June 10, 2015, and entered the United States two weeks later.  Mr. Gutierrez was issued a Notice to Appear by the Department of Homeland Security.  The DHS charged that he was removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled.

In June of 2016, Mr. Gutierrez, on behalf of himself and his son Alexander, filed an application for asylum and withholding of removal based on his membership in a particular social group and for relief under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, 8 C.F.R. § 1208.16(c).  Mr. Gutierrez stated in his application that he was threatened by gang members because he reported them to the police after they stole from his small business.  He feared the gangs would kill or torture him and his family due to the police report, his son's refusal to join the gang, and the police's refusal to help and frequent work with the gangs.

Along with his application for asylum, Mr. Gutierrez submitted a letter further detailing the robbery and ensuing events.  Specifically, the letter detailed how some people stole from his business, he notified the police, and the police arrested the individuals.  The police, however, released the suspects, and in retaliation they again robbed and vandalized his store and threatened his son because they wanted him to join the gang.  These events, along with the general lack of opportunities, high

3

violent crime rate, and the power of the gangs in Guatemala led Mr. Gutierrez to flee to the United States.

In support of his application, Mr. Gutierrez submitted two additional letters. The first letter was from Mr. Gutierrez to the Justice of the Peace detailing the items that were stolen from his shop. The second letter, from a policeman to the Justice of the Peace, explained that in following up on a complaint by Mr. Gutierrez, he found that 2 boys, ages 14 and 10, had sold to another merchant some soap which presumably had been stolen from Mr. Gutierrez's store.

Mr. Gutierrez also submitted a Guatemala 2015 Human Rights Report, which noted widespread institutional corruption in the police and judiciary, police and military involvement in crimes such as kidnapping and extortion, and arbitrary killings, abuse, and mistreatment by National Civil Police members. He also submitted a U.S. Department of State 2015 Crime and Safety Report for Guatemala that rated the overall crime and safety situation as critical. In addition, Mr. Gutierrez submitted newspaper articles that described gang activity and violent crimes in Guatemala.

At the merits hearing, Mr. Gutierrez testified about the whereabouts and immigration status of his family and the events in Guatemala that led him to come to the United States. On cross-examination, Mr. Gutierrez testified that neither he nor his son were physically harmed, that his daughter was still in Guatemala with

her husband, that nothing had happened to the daughter because she had a husband to protect her, and that Mr. Gutierrez had not tried to move to another part of Guatemala to avoid retaliation.

The IJ issued an oral decision denying Mr. Gutierrez's applications for asylum, withholding of removal, and CAT relief. The IJ found Mr. Gutierrez to be credible, but also found that he had failed to establish persecution based on one of the enumerated grounds. Specifically, the IJ stressed that Mr. Gutierrez and his son were not physically harmed, Mr. Gutierrez's business was robbed while no one was there, and Mr. Gutierrez reported the alleged perpetrators, who were arrested. The IJ noted that the perpetrators were released due to their age and, a week later, Mr. Gutierrez's son was threatened. The IJ found that the events were regrettable but, even in the cumulative, failed to establish past persecution.

The IJ also found that Mr. Gutierrez provided no persuasive evidence to establish that his proposed particular social group, which consisted of Guatemalan business owners who were threatened, qualified as a particular social group under INA § 101(a)(42)(B), 8 U.S.C. § 1101(a)(42)(B), because it was not defined by a shared immutable characteristic. Furthermore, the IJ found that the burglary was a criminal act, and there was no evidence that Mr. Gutierrez was targeted for membership in a particular social group or any other protected ground.

The IJ concluded that because he had not established past persecution, there was no presumption that Mr. Gutierrez had a well-founded fear of future persecution. Absent this presumption, Mr. Gutierrez failed to establish a well-founded fear of future persecution if he returned to Guatemala because he presented no evidence to indicate that the individuals who committed the burglary were searching for Mr. Gutierrez or any member of his family. The IJ noted that Mr. Gutierrez's daughter still lived in Guatemala and there was no evidence that she was targeted or had any harm come to her because of this incident or the fact that Mr. Gutierrez reported the matter to the police.

The IJ found that because Mr. Gutierrez failed to meet his burden of proof for asylum, he had also failed to meet the more stringent burden of proof for withholding of removal. Finally, the IJ concluded that Mr. Gutierrez was not eligible for CAT relief because the record did not indicate that it was more likely than not that he would face torture by or with the consent or acquiescence of a public official upon his return to Guatemala.

Mr. Gutierrez timely appealed to the BIA. Mr. Gutierrez argued that he suffered past persecution when the men who robbed his business threatened to beat up his son. Mr. Gutierrez asserted that he showed a well-founded fear of future persecution because the people who robbed the store were not detained for longer than a day and if he went back to Guatemala, he would likely be targeted by these

individuals again.  Mr. Gutierrez also maintained that he had sustained his burden under the CAT of proving that he was more likely than not to be tortured if he returned through the 2015 Human Rights Report and the other evidence submitted in support of his asylum application.

In a single-member order, the BIA affirmed the IJ's decision without opinion, making the IJ's decision the final agency determination.  Mr. Gutierrez timely filed this petition for review.

## II

When the BIA issues a summary affirmance of the IJ's opinion, the IJ's decision becomes the final removal order subject to review.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005).  We therefore review the IJ's underlying decision.  *See id.*

In petitions for review of immigration decisions, we review factual determinations under the substantial evidence test and conclusions of law *de novo*. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  Under the substantial evidence test, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007).  We will affirm the BIA's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.*  The record must compel a

contrary conclusion to warrant reversal. *See id.* The mere fact that the record may support a different conclusion is not sufficient to justify a reversal of administrative findings. *See id.*

We lack jurisdiction to review final orders in immigration cases unless the applicant has exhausted all administrative remedies available as of right. *See* INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015). An applicant fails to exhaust his administrative remedies with respect to a particular claim when he does not raise that claim before the BIA. *See Indrawati*, 779 F.3d at 1297.

To establish asylum eligibility, a person must establish (1) past persecution on account of a statutorily listed protected ground, or (2) a well-founded fear that the statutorily protected ground will cause future persecution. *See Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010). A well-founded fear means a reasonable possibility of future persecution. *See Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 965 (11th Cir. 2011). Protected grounds include "race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(B), 8 U.S.C. § 1101(a)(42)(B).

Persecution requires more than mere harassment or a few isolated incidents of verbal harassment or intimidation. *See Sepulveda*, 401 F.3d at 1231. In determining whether a person suffered past persecution, the focus is on the "cumulative effect"

of any incidents. *See Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013). Threatening acts or harm against an asylum applicant's family members do not necessarily constitute or imply persecution of the applicant where there has been no threat or harm directed personally against him. *See Cendejas Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308–09 (11th Cir. 2013).

A showing of past persecution creates a presumption of a well-founded fear of future persecution, which is subject to rebuttal. *See Sepulveda*, 401 F.3d at 1231. An applicant must demonstrate that his fear of future persecution is subjectively genuine and objectively reasonable. *See id.* Credible testimony by the applicant that he genuinely fears persecution can prove the subjective component. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006). The objectively reasonable component can be fulfilled by establishing that the applicant has a good reason to fear future persecution. *See id.*

Whether an asserted group qualifies as a "particular social group" under the INA is a question of law. *See Gonzalez*, 820 F.3d at 403. To qualify as a "particular social group" under the INA, a group must be defined by a shared, immutable characteristic "that the members of the group either cannot change or should not be required to change because it is fundamental to their individual identities or consciences." *See Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1193, 1196 (11th Cir. 2006). The common characteristic must be something other than the risk of

9

being persecuted. *See id.* at 1198. The petitioner must define the particular social group with particularity and show that the group is viewed by society as socially distinct. *See Gonzalez*, 820 F.3d at 404–06. To meet the particularity requirement, the proposed group must be discrete and have definable boundaries, and may not be "amorphous, overbroad, diffuse, or subjective." *See id*. at 404.

The applicant must also prove a nexus between the persecution suffered and the statutorily protected ground. *See Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019). To satisfy the nexus requirement, an applicant must establish that the protected ground was "at least one central reason" for his persecution. *See id.* (quoting INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i) (as amended by the REAL ID Act § 101(a)(3)). One of the five statutory grounds need not be the only motivation for the persecution. *See Sanchez Jimenez*, 492 F.3d at 1232 (reaffirming the "mixed-motive" theory of nexus). On the other hand, evidence that either is consistent with acts of private violence, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground. *See Ruiz*, 440 F.3d at 1258. The agency's nexus determination is an assessment of any future persecutor's motive, which is a factual inquiry. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992) (stating that the INA "makes motive critical" and holding that an applicant must provide some evidence—direct or circumstantial—of a persecutor's motive).

The standard for withholding of removal is higher than that for asylum. To qualify for withholding of removal, an applicant must establish that his life or freedom would be threatened in his country because of his race, religion, nationality, membership in a particular social group, or political opinion. *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The applicant must show that it is more likely than not that he will be persecuted on account of a protected ground if returned to his home country. *See Rodriguez*, 735 F.3d at 1308.

### III

Mr. Gutierrez has failed to raise any argument on appeal concerning his claim for CAT relief. He has therefore abandoned that issue. *See Sepulveda*, 401 F.3d at 1228 n.2.

In his brief to the BIA, Mr. Gutierrez made an argument challenging the IJ's conclusion that he failed to show that he was the subject of past persecution, or would be subjected to future persecution, on account of a protected ground. *See* A.R. at 8–18. So we have jurisdiction to consider his asylum claim. *See Indrawati*, 779 F.3d at 1297.

Turning to the merits, the record contains substantial evidence supporting the IJ's conclusion that Mr. Gutierrez did not suffer past persecution. Mr. Gutierrez presented evidence that his store was robbed and that he filed a complaint with the police. *See* A.R. at 99. Mr. Gutierrez identified the robbers and testified that,

11

because he had gone to the police, his son was threatened on one occasion by the robbers. *See id*. at 81–83. These actions, involving a single instance of robbery and one subsequent threat, even taken cumulatively, do not rise to the level of persecution and instead are examples of harassment or intimidation. *See Sepulveda*, 401 F.3d at 1231 (stating that persecution is an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation). In addition, although Mr. Gutierrez argues on appeal that the BIA failed to take into account economic deprivation as a form of persecution, he did not make that argument to the BIA and, thus, failed to exhaust that particular contention. *See* Appellant's Br. at 12; A.R. at 8–18; *Indrawati*, 779 F.3d at 1297.

Substantial evidence also supports the IJ's conclusion that Mr. Gutierrez did not establish a well-founded fear of future persecution. Because he did not show that he had suffered past persecution, it was Mr. Gutierrez's burden to show that his fear of persecution was subjectively genuine and objectively reasonable. *See Indrawati*, 779 F.3d at 1297. Although Mr. Gutierrez likely satisfied the subjective prong through his personal testimony, which the IJ found credible, he did not establish that this fear was objectively reasonable because he presented no evidence that those who committed the robbery were searching for him or any member of his family. Thus, Mr. Gutierrez did not show that he had good reason to fear future persecution if he returned to Guatemala and consequently failed to establish that his

12

fear was objectively reasonable. *See Ruiz*, 440 F.3d at 1257, 1259 (finding no well-founded fear where the applicant's son and parents remained unharmed in the region where the applicant was allegedly threatened).

In sum, we cannot say that the IJ's conclusions were unfounded. Although Mr. Gutierrez properly preserved his claims for appeal, the record does not compel reversal of the IJ's determination that Mr. Gutierrez was not eligible for asylum because he failed to establish either past persecution or a well-founded fear of future persecution. For the same reasons listed above, the record does not compel reversal of the agency's determination that Mr. Gutierrez would not be able to meet the higher burden of proof for withholding of removal. *See Sepulveda*, 401 F.3d at 1232–1233.[1]

## IV

After careful review, we conclude that the record does not merit reversal of the IJ's determination that Mr. Gutierrez is not eligible for asylum.

**PETITION DENIED.**

---

[1] We do not consider the IJ's ruling on the proposed social group because there is substantial evidence that Mr. Gutierrez did not establish past or future persecution. Further, because Mr. Gutierrez did not argue nexus or that his proposed group qualifies as a protected ground in his brief to the BIA, s*ee* A.R. at 8-18, he abandoned those arguments.